JODI LINKER
Federal Public Defender
Northern District of California
TAMARA CREPET
Assistant Federal Public Defender
19th Floor Federal Building - Box 36106
450 Golden Gate Avenue
San Francisco, CA 94102
Telephone:  (415) 436-7700
Facsimile:  (415) 436-7706
Email:      Tamara_Crepet@fd.org


Counsel for Defendant CASTRO MARTINEZ


IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION


| UNITED STATES OF AMERICA, | **Case No.:** CR 24-00284 VC |
|---|---|
| Plaintiff, | **DEFENDANT'S SENTENCING MEMORANDUM** |
| v. | |
| BRIAN MIGUEL CASTRO MARTINEZ, | |
| Defendant. | |


I.      INTRODUCTION

Mr. Castro Martinez is a twenty-six-year-old man who was born and raised in Tegucigalpa, Honduras. His father separated from his mother when he was six years old, and he and his two brothers were raised by their mother. When Mr. Castro Martinez was fifteen years old, he left school to help to support his mother. He moved in with his uncles, who lived in the country, and worked in construction and in the fields; he earned approximately fifty dollars per month. At the age of seventeen, Mr. Castro Martinez was able to find a job at a restaurant, which enabled him to return to school to earn his high school diploma. He managed

*CASTRO MARTINEZ*, CR 24–00284 VC

to work fulltime and attend school by working from 9:00 a.m.to 12:00 a.m., with a break in between 2:00 p.m. and 4:00 p.m.

Mr. Castro Martinez came to the United States in early 2020 to look for work to help to support his mother, father, partner, and child. Around the time he arrived in the United States, his father contracted COVID and remained in the hospital for five months. This substantially increased Mr. Castro Martinez's financial pressures as paying for medication for his father was expensive, and even after Mr. Castro Martinez's father's health stabilized, he was not well enough to return to work. His mother was also diagnosed with diabetes while he was in the United States, and her treatment and medications were, and continue to be, costly. It is against this back drop that Mr. Castro Martinez committed the instant offense of distributing drugs.

In light of the government's fast track program and compelling circumstances in mitigation, Mr. Castro Martinez requests a time-served sentence and three years of supervised release, consistent with the recommendation of the Government.

Mr. Castro Martinez is a citizen of Honduras and understands that he will almost certainly be deported there upon the completion of his proceedings in this Court.

## II.    PROCEDURAL HISTORY AND GUIDELINES

On May 16, 2024, the Government filed a complaint charging Mr. Castro Martinez with possession with intent to distribute methamphetamine. Dkt. 1. An information was filed on May 23, 2024, dkt. 10, and Mr. Castro Martinez waived indictment on May 24, 2024, dkt. 11.

The plea agreement sets forth an adjusted offense level of 19. The parties agree that Mr. Castro Martinez has no prior criminal convictions and is therefore a criminal history category 1. His concomitant guideline range is 30-37 months.

## III.    BACKGROUND

Brian Miguel Castro Martinez was born and raised in Tegucigalpa. His father left his mother when he was six years old, and he and his two brothers and mother subsequently lived in an apartment that their father rented for them. His father subsequently began a relationship with another woman.

Mr. Castro Martinez, like many of the defendants this Court has sentenced who were raised in Honduras, grew up in poverty. While his father worked long hours as a security guard—from 5:00 a.m. to 7:00 p.m.— this was inadequate to support Mr. Castro Martinez's mother and siblings, and his father's other partner and their children. Consequently, Mr. Castro Martinez grew up in cramped quarters and his family did not have enough money for sufficient food or clothing.

When Mr. Castro Martinez was fifteen years old, he left school and moved in with his uncles who lived in the country three hours away from Tegucigalpa. He wanted to help to support his mother, but unfortunately, he was only able to earn approximately fifty dollars per month. At the age of sixteen, Mr. Castro Martinez met his current partner with whom he has a now ten-year-old daughter. He subsequently was very lucky in finding a job at a restaurant that enabled him to work full time in the afternoons and evenings, while also going to school to complete his high school education during the day.

When Mr. Castro Martinez was around twenty-two years old, in 2020, his family needed additional money to survive. Neither his mother nor partner worked, and he needed to support both of them and his young child. He also needed to help support his father. Consequently, he made the decision to come to the United States.

The trip to the United States was grueling and nightmarish. The journey took about two months and Mr. Castro Martinez spent one and a half months of this time riding the infamous Beast. While riding the Beast, he observed a mother and a child fall off the train onto the train tracks and observed several women sexually assaulted and raped at gunpoint by gang members. He remains traumatized by witnessing these awful events. He was also physically uncomfortable most of the time; he ate one meal per day, and sometimes did not eat any food at all, and as he was travelling in the winter months with only a sweater, he was freezing cold at night.

When Mr. Castro Martinez first arrived in the United States, he lived in Arizona where he worked as a day laborer. After about one month, he travelled to San Francisco in search of greater work opportunities. When he arrived in San Francisco, he found work painting,

gardening, and roofing. Mr. Castro Martinez was largely able to support himself and his family by doing this work. Only when he was desperate to help his parents did he resort to the sale of drugs.

Mr. Castro Martinez apologizes to the public selling drugs. Until he was charged federally, he did not appreciate the serious nature of his conduct, nor was he aware that selling drugs could result in a significant prison sentence or in his almost certain deportation. He further recognizes that if he does not want to return to jail or be sent to prison, he will have to change. He is prepared to find "honorable" work going forwards.

## IV.    LEGAL STANDARD

The Court is familiar with the directives of *United States v. Booker*, 543 U.S. 220 (2005) and 18 U.S.C. § 3553(a). In reaching an appropriate sentence, the Court must consider several factors including the Guidelines range, the nature and circumstances of the offense, the history and characteristics of the defendant, and the need to avoid unwarranted sentence disparities among similarly situated defendants. 18 U.S.C. § 3553(a)(1), (a)(4) and (a)(6).

## V.    ARGUMENT

Several matters warrant the Court's consideration in connection with the § 3553(a) factors and Mr. Castro Martinez's request for a time-served sentence and three years of supervision.

*First*, Mr. Castro Martinez's upbringing in extreme poverty in combination with his having to join the labor force as a child, only to earn $50 per month, warrant a variance to a time-served sentence. Mr. Castro Martinez grew up without basic life necessities including an adequate amount food. He had to drop out of school at the age of fifteen to work in the fields and in construction to help support his family. In addition, his parents' poor health and their need for expensive medication immediately contributed to the instant offense conduct, and while this does not excuse his conduct, Mr. Castro Martinez respectfully asserts that it mitigates it. *Landrigan v. Schriro*, 441 F.3d 638, 648 (9th Cir. 2006) ("Where a defendant's crime is attributable to a disadvantaged background or emotional or mental problems the defendant is less culpable than one without the excuse.")

*CASTRO MARTINEZ*, CR 24–00284 VC

*Second,* a sentence of time-served is appropriate given the nature and circumstances of the offense. Mr. Castro Martinez possessed a quantity of drugs consistent with street-level drug dealing. His conduct did not involve the use of violence and he did not possess a weapon. He did not have a managerial role in the trafficking of drugs, nor does he have significant ties to a large-scale criminal organization or cartel, or to a violent gang. In this same vein, he does not have a significant history of criminal activity that involved the threat of violence or possession of illegal firearms. While he does have three prior arrests for drug-related conduct, these arrests do not foreshadow a likelihood of future activity selling drugs, as he is now aware of the consequences attendant to this type of activity which were not made known to him while he was in the state system, and which he wants to avoid at all costs going forward.

The fact that Mr. Castro Martinez is neither a manager nor leader of a drug enterprise is also significant because Congress created the sentencing scheme for drug offenders specifically to punish individuals holding those roles; Congress did not intend to severely punish low-level drug dealers with no prior criminal convictions. *See United States v. Diaz*, No. 11-CR-00821-2 JG, 2013 WL 322243, at *6 (E.D.N.Y. Jan. 28, 2013). These circumstances warrant a variance to a time-served sentence.

*Third*, a sentence of time-served is appropriate because it is consistent with sentences received by other defendants who were convicted of dealing similar quantities of drugs, and who have criminal history backgrounds commensurate with Mr. Castro Martinez's.

## VI.   CONCLUSION

Based on the above, Mr. Castro Martinez respectfully requests that the Court sentence him to time-served and three years of supervised release.

Respectfully submitted,

Dated:    May 29, 2024

JODI LINKER
Federal Public Defender
Northern District of California

                            /S
TAMARA CREPET
Assistant Federal Public Defender

*CASTRO MARTINEZ*, CR 24–00284 VC

6